O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

#140,141,142

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(In Chambers) Order Granting Defendants' Motion to Dismiss**

Pending before the Court is Defendants' Motion to Dismiss. A hearing on the motion was held on February 11, 2010. After considering the moving and opposing papers and arguments presented at the hearing, the Court GRANTS Defendants' motion.

I.     Background

On August 20, 2007, Plaintiffs Steve Harris ("Harris") and Dennis Ramos ("Ramos") filed a complaint against Amgen, Inc. ("Amgen") and other defendants under § 502(e)(1) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e)(1). Harris and Ramos sought to represent a class of current and former employees of Amgen and Amgen's subsidiaries who participated in the Amgen Retirement and Savings Plan ("the Amgen Plan") and the Retirement and Savings Plan for Amgen Manufacturing, Ltd. ("the AML Plan")[1] (collectively, "the Plans").

On February 1, 2008, the Court dismissed Harris' claims for lack of standing as a "plan participant" as well as the balance of the complaint for failure to name the proper plan fiduciaries. *See* Order Granting Defendants' Motion to Dismiss (Dkt. #48). The Court denied Harris' and Ramos' request for leave to amend. *See id.* at 11. However, the Ninth Circuit reversed, holding that (1) subsequent case law conferred standing on individuals who have

---

[1] Amgen Manufacturing, Ltd. ("AML") is a wholly-owned subsidiary of Amgen. *See Compl.* ¶ 25.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#140,141,142**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

received the full distribution from a plan and (2) Harris and Ramos should be granted leave to amend "to challenge the proper defendants and to present any viable claim." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

On November 12, 2009, Plaintiffs Harris, Ramos, Jorge Torres, and Albert Cappa (collectively, "Plaintiffs") filed a Class Action Consolidated Complaint ("Complaint") against (1) Amgen and AML ("the Entity Defendants")[2], (2) members of the Amgen Board of Directors ("the Director Defendants")[3], (3) Amgen officers ("the Individual Defendants")[4], (4) the Global Benefits Committee ("GBC") of the Amgen Plan, and (5) and the Fiduciary Committee (collectively, "Defendants").[5]

The Amgen Plan is an employee pension benefit plan for Amgen employees pursuant to §§ 3(2)(A) and 3(3) of ERISA, 29 U.S.C. §§ 1002(2)(A), (3), and is an eligible individual account plan ("EIAP") under § 407(d)(3)(A) of ERISA, 29 U.S.C. § 1107(d)(3)(A). *See Compl.* ¶¶ 71, 79. Similarly, the AML Plan is an employee pension benefit plan for AML employees pursuant to §§ 3(2)(A) and 3(3) of ERISA, 29 U.S.C. §§ 1002(2)(A), (3), and is also an EIAP. *See id.* ¶¶ 71, 84. The Plans permit plan participants to select from various investment options, including an option to invest in the Amgen Inc. Common Stock Fund. *See id.* ¶¶ 2, 76.

---

[2] The Court notes that Plaintiffs do not identify AML as a defendant on the caption page of the Complaint. *See* Fed. R. Civ. P. 10(a) (requiring that the title page of a complaint "name all the parties"). However, Plaintiffs do include AML in the discussion of the parties. *See Compl.* ¶ 25; *see also Opp.* (including AML on the cover sheet of Plaintiffs' Opposition). Thus, it is clear that Plaintiffs intended to assert claims against AML, and the Court will treat AML as a defendant in the action. *See Silvis v. Cal. Dept. of Corrs.*, No. 07-0332, 2009 WL 806870, at *1 (E.D. Cal. Mar. 26, 2009).

[3] The Director Defendants are Frank J. Biondi, Jerry D. Choate, Frank C. Herringer, Gilbert S. Omenn, David Baltimore, Judith C. Pelham, Kevin W. Sharer, Frederick W. Gluck, and Leonard D. Shaeffer.

[4] The Individual Defendants are Robert A. Bradway, Dennis M. Fenton, Richard Nanula, and Charles Bell.

[5] The Complaint alleges facts similar to those alleged in the original complaint and those alleged in a parallel securities class action (CV 07-2536 PSG).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#140,141,142**

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|----------|----------------------|------|---------------|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

Plaintiffs allege that from May 4, 2005 to March 9, 2007 ("the Class Period"), Defendants concealed the negative results of clinical studies of the Amgen drug Aranesp®, including a study by the Danish Head and Neck Cancer Group ("DAHANCA"). *See id.* ¶¶ 110-147. During this time, Defendants also allegedly marketed Aranesp® and another Amgen drug, Epogen®, for "off-label" uses that they allegedly knew were risky while at the same time they purported to market the drugs for uses consistent with the FDA label. *See id.* ¶¶ 148-175. Eventually, the negative results of the DAHANCA study were published in *The Cancer Letter* on February 16, 2007, *see id.* ¶ 179, and Amgen subsequently revealed that the Securities and Exchange Commission had opened an inquiry into the DAHANCA trial, *see id.* ¶ 237. Finally, on March 9, 2007, the FDA mandated a "black box" warning concerning the risks of "off label" uses of Aranesp® and Epogen®. *See id.* ¶ 238. As a result of the alleged misconduct, Amgen stock "lost a significant amount of its value." *Id.* ¶ 244-45.

Plaintiffs claim that Defendants are liable for these losses as fiduciaries of the Plans. Defendants allegedly breached numerous fiduciary duties by permitting plan participants to continue investing in the Amgen Inc. Common Stock Fund when Defendants knew of the health risks associated with Aranesp® and marketed Aranesp® and Epogen® for "off label" uses. In the Complaint, Plaintiffs assert claims for (1) breach of the fiduciary duty of loyalty, (2) breach of the fiduciary duty of care, (3) breach of the fiduciary duty to provide complete and accurate information, (4) breach of the fiduciary duty to monitor, (5) co-fiduciary liability, and (6) "party-in-interest" liability. On December 16, 2009, Defendants filed a motion to dismiss for failure to state a claim under Rule 12(b)(6).

II.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a cause of action if the plaintiff fails to state a claim upon which relief can be granted. In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts must be mindful that the Federal Rules of Civil Procedure require that the complaint merely contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required to survive a Rule 12(b)(6) motion to dismiss, a complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, —U.S.—, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#140,141,142**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|----------|------------------------|------|----------------|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

In resolving a Rule 12(b)(6) motion, the Court must engage in a two-step analysis. *See id.* at 1950. The Court must first accept as true all non-conclusory, factual allegations made in the complaint. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). Based upon these allegations, the Court must draw all reasonable inferences in favor of the plaintiff. *See Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009). To further the inquiry, the Court may consider extrinsic documents that are either subject to judicial notice, or are referred to or necessarily relied upon in the complaint and where their authenticity has not been questioned. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds*.

After accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the Court must then determine whether the complaint alleges a plausible claim to relief. *See Iqbal*, 129 S. Ct. at 1950. In determining whether the alleged facts cross the threshold from the possible to the plausible, the Court is required "to draw on its judicial experience and common sense." *Id.* "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.*

III.   Discussion

Defendants move to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim. On January 15, 2010, Plaintiffs filed a timely Opposition to the motion, and Defendants filed a timely Reply on January 29, 2010. The Court will (1) decide whether to grant Defendants' request for judicial notice, (2) determine whether Plaintiffs have identified the proper Defendants, and (3) address each count asserted in the Complaint.

A.   The Court Considers Defendants' Exhibits

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#140,141,142**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|----------|------------------------|------|----------------|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

Defendants request that the Court take judicial notice of 15 exhibits attached to the Request for Judicial Notice. *See RJN* 1-2. Plaintiffs filed an objection to the request in its entirety on the grounds that all exhibits are not properly subject to judicial notice, contain inadmissible hearsay, and have not been authenticated. *See Pls.' Obj. to Defs.' Request for Judicial Notice and Mot. to Strike ("Obj.")*, at 1:12-14. Furthermore, Plaintiffs specifically object to Exhibits 1, 2, 3, 5, 6, 9, 11, 12, 13, and 15 on the grounds that these exhibits were not explicitly referenced in the Complaint. *See id.* at 1:8-12. In the Objection, Plaintiffs also include a Motion to Strike Unsupported Factual Allegations. *See id.* at 9:27-10:20.

Defendants counter that the Court has already taken judicial notice of Exhibits 1-11 (in the February 1, 2008 Order) and that the Court should simply take judicial notice of these documents again. *See Response to Pls.' Obj. to Defs.' Request for Judicial Notice and Mot. to Strike ("Response")* 1:16-4:2. Defendants also argue that the remaining Exhibits 12-15 are properly subject to judicial notice. In the Objection, Plaintiffs do not argue that the documents are inaccurate in any respect. For the reasons that follow, the Court overrules Plaintiffs' objections and considers Exhibits 1-15 when necessary.

1.     The Court Has Taken Judicial Notice of Exhibits 1-3 and 10-11

In the Court's February 1, 2008 Order granting Defendants' motion to dismiss, the Court took judicial notice of Exhibits 1-4[1] and 10-11 because they were "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see* Dkt. #48, at 3 (citing Fed. R. Evid. 201(b)). Plaintiffs did not object to the earlier request for judicial notice and, thus, waived any objections to the Court taking judicial notice of these exhibits. *See* Fed. R. Evid. 201(e) (allowing an opportunity to object to a request or taking of judicial notice upon a "timely request"); *see also Response* 2:20-27 (arguing that Plaintiffs' objections to Exhibits 1-11 constitute "a disguised motion for reconsideration of the Court's February [1], 2008 Order"). As Plaintiffs have waived objection, the Court takes judicial notice of Exhibits 1-3 and 10-11: the Aranesp® label from the FDA website (Ex. 1), the Epogen® label from the FDA website (Ex. 2), a LexisNexis report of Amgen's daily stock price

---

[1] Defendants concede that Exhibit 4 is not identical to the exhibit that the Court previously judicially noticed. *See Response* 3 n.3. Thus, Plaintiffs did not waive objection to Exhibit 4.

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**#140,141,142**

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

between April 1, 2004 and October 31, 2007 (Ex. 3), *The Cancer Letter* (Ex. 10), and the September 28, 2007 analyst report by Bernstein Research (Ex. 11).

    2.    <u>The Court Considers Exhibits 5-9 and 13-14 Under the Doctrine of Incorporation by Reference</u>

        Defendants ask the Court to take judicial notice of Exhibits 5-9 and 13-14 ("the plan documents"). In the prior Order, the Court considered documents identical to Exhibits 5-9 because Plaintiffs relied upon the plan documents in the Complaint and did not question their authenticity. *See* Dkt. #48, at 2-4. Defendants attempt to apply the waiver argument discussed above to these exhibits. *See Response* 1:17-18. However, the Court did not take judicial notice of the plan documents in the prior Order; rather, the Court considered the exhibits under the doctrine of incorporation by reference. *See* Dkt. #48 (citing *Parrino*, 146 F.3d at 706). Therefore, although Plaintiffs did not object to Exhibits 5-9 during the Court's consideration of the prior motion to dismiss, Plaintiffs did not waive objection under Fed. R. Evid. 201(e).

        In the prior Order, the Court considered Exhibits 5-9 because Plaintiffs did not question their authenticity. However, now facing a second motion to dismiss, Plaintiffs claim that "Defendants fail to authenticate these documents by anyone with knowledge that they are indeed what they purport to be." *Obj.* 4:7-9. Plaintiffs also include the plan documents in their blanket hearsay and authentication objections. *See id.* 1:12-14 ("Plaintiffs also object to Exs. 1-15 on the grounds that they are not properly subject to judicial notice, contain inadmissible hearsay, have not been authenticated and their accuracy and reliability have not been established."). Despite Plaintiffs' objections, the plan documents are not hearsay because they are being offered to establish the terms of the Plans. *See Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1154 (9th Cir. 2000) (finding that a contract constitutes a "verbal" act that is "excluded from the definition of hearsay and is admissible evidence because it is a legally operative document that defines the rights and liabilities of the parties"). Furthermore, the Court has sufficient information "to support a finding that [each plan document] is what its proponent claims." *See* Fed. R. Evid. 901(a). Defendants' counsel signed the RJN and attests that the "documents attached herein are true and correct copies." *See RJN* 1:7, 6:14. Indeed, at the hearing on the motion, Plaintiffs' counsel conceded that the plan documents are not inaccurate. Accordingly, the Court considers the plan documents under the doctrine of incorporation by reference.

    3.    <u>The Court Takes Judicial Notice of Exhibits 4, 12, and 15</u>

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

#140,141,142

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|----------|----------------------|------|---------------|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

Pursuant to Fed. R. Evid. 201(b), the Court takes judicial notice of portions of Amgen's SEC Form 10-K filings (Ex. 4), a LexisNexis report of Amgen's daily stock price from January 2, 2008 to December 31, 2008 (Ex. 12), and BrightScope's 2009 Top 30 401k Plans List ("the BrightScope List") (Ex. 15). The Court takes judicial notice of Exhibit 4 (a slightly altered version of an exhibit judicially noticed in the prior motion) because the exhibit contains SEC filings. *See Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (noting that courts "may consider documents referred to in the complaint or any matter subject to judicial notice, *such as SEC filings*"). The Court also takes judicial notice of Exhibit 12—the report of Amgen's stock price during the Class Period—because this document is capable of ready determination. *See Plevy v. Haggerty*, 38 F. Supp. 2d 816, 821 (C.D. Cal. 1998) (noting that "the stock price of a publicly-traded company is proper subject matter for judicial notice"). Finally, the Court takes judicial notice of the BrightScope List (Ex. 15) because it is capable of ready determination by consulting BrightScope's website. For these reasons, the Court takes judicial notice of all the exhibits contained in the Request for Judicial Notice. Plaintiffs' motion to strike is DENIED insofar as the motion pertains to factual allegations substantiated by Exhibits 1-15.

B.      Allegations of Defendants' Fiduciary Status

Only fiduciaries can be held liable for breach of fiduciary duty under ERISA. *See Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004). In granting Defendants' prior motion to dismiss, the Court found that Harris and Ramos failed to allege that certain defendants were fiduciaries of the AML Plan. *See* Dkt. #48, at 8-11. In the Ninth Circuit opinion reversing the dismissal, the court stated:

Plaintiffs' remaining claims were dismissed because they misidentified the proper fiduciary defendants. Although Plaintiffs did not name the Fiduciary Committee as a defendant, they did name a Retirement Benefits Committee, which they thought served the same fiduciary functions. Also, Plaintiffs identified Amgen as the named fiduciary of the Manufacturing Plan, when in fact Amgen Manufacturing is the named fiduciary of that plan. In both cases, Plaintiffs would have sued the proper fiduciary but for a misidentification of the correct defendant, and their claims against Amgen Manufacturing and the Fiduciary Committee can be saved by amendment.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#140,141,142

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

*Harris*, 573 F.3d at 737. Plaintiffs have returned with a new Complaint, asserting claims against new defendants whom Plaintiffs allege to be fiduciaries of the Plans. Again, Defendants argue that Plaintiffs have failed to sue the proper defendants and that, thus, the claims against Amgen, AML, the Director Defendants, and the Individual Defendants must be dismissed. *See Mot.* 25:20-21.

    1.  The Entity Defendants

  A named fiduciary can delegate its fiduciary responsibilities to an administrator under ERISA and thereby limit liability for any subsequent breaches of fiduciary duties by the designee. *See* 29 U.S.C. § 1105(c); *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1325 (9th Cir. 1985) ("Although employees of [a corporate entity] serve on the Employee Benefits Committee and the Committee has a fiduciary responsibility in determining claims, this does not make the employer a fiduciary with respect to the Committee's acts. ERISA anticipates that employees will serve on fiduciary committees but the statute imposes liability on the employer *only when and to the extent that the employer himself exercises the fiduciary responsibility allegedly breached.*" (emphasis added)).

    a.  Amgen

  Plaintiffs allege that Amgen is the "Plan Sponsor and Administrator and is a 'named fiduciary of the Plans.'" *See Compl.* ¶ 24. Defendants argue that Amgen delegated its fiduciary responsibilities under the Amgen Plan, as permitted under ERISA. *See Mot.* 24:20-23 (citing *RJN*, Ex. 5).[7] Under the Amgen Plan, Amgen is the "named fiduciary," but Amgen delegated its responsibilities to the GBC and the Fiduciary Committee. *See RJN*, Ex. 5, at 207 ("To the extent that the Plan requires an action under the Plan to be taken by the Company [Amgen], the party specified in this Section 15.1 shall be authorized to act on behalf of the Company."); *id.* at 208 (authorizing the GBC and the Fiduciary Committee to assume administrative responsibilities of

---

  [7] The Court notes that Defendants' general citations to the exhibits are unacceptable. The Amgen Plan alone is 52 pages long. *See RJN*, Ex. 5. The Court should not have to search through hundreds of pages of exhibits because, as other courts have observed, "[j]udges are not like pigs, hunting for truffles buried in briefs." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (citation omitted).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#140,141,142

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

the Plan).  Thus, Amgen apparently delegated its fiduciary responsibilities under the Amgen Plan.

Plaintiffs also argue in the Opposition that Amgen was a fiduciary of the Plans because its Board exercised authority over the Plans, and the actions of other fiduciaries can be imputed to Amgen under the doctrine of *respondeat superior.  See Opp.* 7 n.9.  However, this argument is inconsistent with the core principle of ERISA that "employees will serve on fiduciary committees but [that] the statute imposes liability on the employer only when and to the extent that the employer [itself] exercises the fiduciary responsibility allegedly breached."  *See Gelardi*, 761 F.2d at 1325.  Thus, Amgen cannot be held liable for breach of fiduciary duty under the doctrine of *respondeat superior.  See Tool v. Nat. Employee Benefit Servs., Inc.*, 957 F. Supp. 1114, 1121 (N.D. Cal. 1996).

Additionally, Amgen is not apparently a fiduciary of the AML Plan.  According to the AML Plan, only AML is designated as the "named fiduciary" of the AML Plan.  *See RJN*, Ex. 7, at 312 (naming only the "Company" as the "named fiduciary" of the AML Plan); *id.* at 269 (defining the "Company" as "Amgen Manufacturing, Limited, a Bermuda corporation and any successor thereto").  Accordingly, the Court GRANTS Defendants' motion to dismiss as to Amgen without prejudice.

      b.   <u>AML</u>

Plaintiffs allege that AML was the "named fiduciary" of the AML Plan.  *See Compl.* ¶ 25. Defendants cite Exhibit 7 (the AML Plan) to argue that AML delegated its fiduciary responsibilities "to trustees and investment managers, and their responsibilities as plan sponsors and named fiduciaries to the Fiduciary Committee."  *Mot.* 24:20-23.[8]  As discussed, AML is the "named fiduciary" of the AML Plan.  *See RJN*, Ex. 7, at 312; *id.* at 269.  The AML Plan further indicates that AML is a fiduciary "only to the extent of having the authority (a) to appoint one or more Trustees to hold assets of the Plan in trust . . . , (b) to appoint one or more insurance companies . . . to hold assets of the Plan . . . , (c) to appoint one or more Investment Managers for any assets of the Plan . . . , and (d) to direct the investment of any Plan assets not assigned . .

--------

[8] Defendants cite generally to Exhibit 7, a 50-page document.  At the hearing, Defendants' counsel offered to provide the Court with a specific page reference.  However, to date, Defendants' counsel has not provided the reference to the Court.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#140,141,142**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

. .” *Id.* at 310. It is not clear from the plan documents, however, that AML actually delegated its fiduciary responsibilities. Therefore, Plaintiffs' claims will not be dismissed as to AML on this ground.

2.     The Director Defendants

Defendants argue that Plaintiffs fail to allege that the Director Defendants were fiduciaries of the Plans. *See Mot.* 24:27-25:5. Plaintiffs allege that the Director Defendants were *de facto* fiduciaries of the Plans because they “exercised discretionary authority with respect to: (i) the management and administration of the Plans; or (ii) the management and disposition of the Plans' assets.” *See Compl.* ¶¶ 26-35. However, these allegations are legal conclusions that lack a sufficient factual basis. *See In re Calpine Corp. ERISA Litig.*, No. 03-1685, 2005 WL 1431506, at *3 (N.D. Cal. Mar. 31, 2005) (“While plaintiff has mimicked the language of 29 U.S.C. § 1002(21)(A), he does not provide factual allegations in support of this conclusion sufficient to support a finding that the Director Defendants are *de facto* fiduciaries on this basis.”); *see also Iqbal*, 129 S. Ct. at 1949. Though Plaintiffs add some factual allegations with respect to the Director Defendants' job duties, *see Compl.* ¶¶ 26-36 (noting that the Director Defendants approved an amendment to the Plans filed with the SEC), these allegations appear to pertain to their general corporate functions as opposed to any specific fiduciary responsibilities.

Plaintiffs offer another argument with respect to the Amgen Plan. Plaintiffs allege that the Director Defendants committed an *ultra vires* act by directly appointing the Fiduciary Committee. According to Plaintiffs, the Director Defendants were obligated to appoint the GBC, which was in turn required to appoint the members of the Fiduciary Committee. *See Opp.* 8:6-83. Plaintiffs claim that in directly appointing the members of the Fiduciary Committee, the Director Defendants committed an *ultra vires* act, thereby exposing them to individual liability for breach of fiduciary duty under ERISA. *See Opp.* 8:10-14; *see also Compl.* ¶¶ 42-44. The Court, however, is not persuaded by this argument. In the Complaint, Plaintiffs offer contradictory allegations about whether the GBC was ever constituted. *Compare Compl.* ¶ 42 (alleging that the GBC “was a committee appointed by the Amgen Board of Directors or one of its duly appointed delegates”), *with id.* ¶ 87 (alleging that the Amgen Board of Directors directly appointed the Fiduciary Committee to oversee the operation of the Plans).[9] Moreover, Plaintiffs

---

[9] Plaintiffs cite to a string of paragraphs in the Complaint that purport to contain allegations that, under the Amgen Plan, the role of the Fiduciary Committee fell to the Director

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

#140,141,142

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

provide no authority supporting their contention that the alleged *ultra vires* act subjects the Director Defendants to individual liability for the alleged breaches. Thus, the Director Defendants are not liable under the Amgen Plan on this ground.

With respect to the AML Plan, the Board of Directors is permitted to appoint the members of the Fiduciary Committee directly. Plaintiffs claim that the Director Defendants are liable for breaches associated with the AML Plan because the Director Defendants allegedly failed to duly appoint the Fiduciary Committee. *See Opp.* 8:14-18. As with their allegations concerning the Amgen Plan, however, Plaintiffs offer conclusory allegations that the Director Defendants were fiduciaries of the AML Plan. Even assuming that Director Defendants failed to properly constitute the Fiduciary Committee, Plaintiffs do not sufficiently allege that Director Defendants would be liable individually for the specific breaches alleged in the Complaint. Thus, Plaintiffs have failed to allege that the Director Defendants were fiduciaries of the AML Plan.

Nevertheless, Plaintiffs may have sufficiently alleged that one of the Director Defendants, Kevin W. Sharer ("Sharer"), was a fiduciary of the Amgen Plan. Plaintiffs allege that "upon information and belief, [Sharer] was a member of the Defendant Plan Fiduciary Committee." *Compl.* ¶ 32. As Defendants note, "In this regard, the *only* Individual Defendant alleged, *upon information and belief*, to have served as a member of the Fiduciary Committee is Kevin Sharer." *Opp.* 5:3-5 (emphasis in original). Though Defendants claim that Sharer "never served on the Fiduciary Committee" and that Plaintiffs have known this fact for two years, the Court will not dismiss the claims against Sharer on this basis. Therefore, the Court GRANTS Defendants' motion to dismiss as to Defendants Frank J. Biondi, Jerry D. Choate, Frank C.

---

Defendants due to the apparent bypass of the GBC. However, the cited paragraphs do not specifically allege that the Director Defendants are individually liable for committing the alleged *ultra vires* act. *See Compl.* ¶ 87 (alleging that the Amgen Board of Directors directly appointed the Fiduciary Committee to oversee the operation of the Plans); *id.* ¶ 90 (alleging that the Individual Defendants were fiduciaries of the AML Plan); *id.* ¶ 329 (alleging that the Director Defendants appointed the Fiduciary Committee, and that the Fiduciary Committee and its members were responsible for managing the Plans' investments); *id.* at 353 (alleging that the Director Defendants breached their duty to monitor the members of the Fiduciary Committee); *id.* at 356 (same).

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**#140,141,142**

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

Herringer, Gilber S. Omenn, David Baltimore, Judith C. Pelham, Frederick W. Gluck, and Leonard D. Shaeffer without prejudice.

#### 3.      The Individual Defendants

Plaintiffs fail to allege with sufficient specificity how the Individual Defendants breached their purported fiduciary duties. *See In re McKesson HBOC, Inc. ERISA Litig.*, No. 00-20030, 2002 WL 31431588, at *17 (N.D. Cal. Sept. 30, 2002) ("[P]laintiffs shall identify the breaches of fiduciary duty, identify the defendants with knowledge of the breaches, identify . . . specifically how each defendant failed to take reasonable efforts to remedy the breach, and identify what acts the specific defendants took to conceal information."). Accordingly, the Court GRANTS Defendants' motion to dismiss as to the Individual Defendants without prejudice.

#### 4.      The GBC and the Fiduciary Committee

Defendants do not contest Plaintiffs' allegations that the GBC and the Fiduciary Committee were ERISA fiduciaries. Therefore, the claims remain against only AML, Sharer, GBC, and the Fiduciary Committee.

#### C.      Plaintiffs' Claims

The Court will now evaluate the six counts against the remaining Defendants.

#### 1.      Breach of the Duty of Loyalty (Count I)

Plaintiffs assert a claim for breach of the fiduciary duty of loyalty pursuant to § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A). *See Compl.* ¶¶ 304-318. Plaintiffs allege that Defendants were under a fiduciary obligation to avoid conflicts of interest, and that they violated that obligation by failing to appoint independent fiduciaries and failing to notify federal agencies that Amgen stock was no longer a suitable investment for the Plans. *See id.* ¶¶ 308-309. Plaintiffs further allege that Defendants did not take such preventive measures because their compensation included Amgen stock, and eliminating the Amgen investment option "would have sent a negative signal to Wall Street analysts, which in turn would result in reduced demand for Amgen stock and a drop in the stock price." *Id.* ¶ 313. Finally, Plaintiffs claim that Defendants continued to market "off label" uses for Aransep® and Epogen® despite their

**O**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**#140,141,142**

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|----------|------------------------|------|----------------|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

knowledge of the health risks because Defendants' stood to gain from increased sales of the drugs. *See id.* ¶ 315.

Plaintiffs allegations all relate to the potential conflict of interest affecting plan fiduciaries who also received compensation from Amgen in the form of company stock. However, such allegations are insufficient to state a claim for beach of the fiduciary duty of loyalty under ERISA. *See In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970, 987-88 (C.D. Cal. 2004) (noting that "[u]nder this theory, corporate defendants would always have a conflict of interest"); *In re Citigroup ERISA Litig.*, No. 07-9790, 2009 WL 2762708, at *26 (S.D.N.Y. Aug. 31, 2009) (holding that allegations that the defendants' compensation was "tied to the performance of Citigroup stock" were insufficient to state an actionable claim for conflict of interest); *In re WorldCom*, 263 F. Supp. 2d 745, 768 (S.D.N.Y. 2003) (holding that allegations that the defendant owned shares of WorldCom stock were insufficient to establish an actionable conflict of interest). Indeed, ERISA explicitly permits a corporate officer, employee, or agent to serve as a plan fiduciary. *See* 29 U.S.C. § 1108(c)(3) ("Nothing in section 1106 of this title shall be construed to prohibit any fiduciary from . . . serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest."). Therefore, the Court GRANTS Defendants' motion to dismiss Plaintiffs' claim for breach of the fiduciary duty of loyalty without prejudice.

> 2.   <u>Breach of the Duty of Care (Count II)</u>

Plaintiffs assert a claim for breach of the fiduciary duty of care against all Defendants. Plaintiffs allege that continuing to provide Amgen stock as an investment option under the Plans was "imprudent" because Defendants knew of the negative studies of Aranesp® and knew that continued marketing of "off label" uses of the drugs would ultimately harm the price of Amgen stock. *See Compl.* ¶¶ 319-334. Though fiduciaries of an EIAP are exempted from ERISA's duty to diversify, *see* 29 U.S.C. § 1104(a)(2), they are still obligated to "act with care, skill, prudence, [and] diligence," *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1002 (9th Cir. 2008). When evaluating the prudence of an ERISA fiduciary's actions, courts are divided over whether to apply a presumption of prudence or a "prudent man" standard. Thus, the Court will examine Plaintiffs' claims under each standard.

> a.   <u>Plaintiffs Fail to Rebut the Presumption of Prudence</u>

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#140,141,142**

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|----------|------------------------|------|----------------|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

Under the "*Moench* standard," plan fiduciaries are entitled to a presumption of prudence, unless the plaintiff alleges sufficient facts to rebut the presumption. Courts commonly refer to this test as the "*Moench* standard," named after the Third Circuit case that first employed a presumption of prudence in the ERISA context. *See Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995). Though the Ninth Circuit has yet to formally adopt the *Moench* standard, *see Wright*, 360 F.3d at 1098 n.3 ("[W]e decline at this juncture to adopt wholesale the *Moench* standard."); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1002 (9th Cir. 2008) ("As an initial matter, this Circuit has not yet adopted the *Moench* presumption, and we decline to do so now."), the Circuit has also declined to *reject* the *Moench* standard. In fact, the two Ninth Circuit cases that declined to adopt the *Moench* standard proceeded to apply it. *See Wright*, 360 F.3d at 1098 ("Though Plaintiffs contend that the district court prematurely dismissed their claims at the motion to dismiss stage, Plaintiffs' alleged facts effectively preclude a claim under *Moench*, eliminating the need for further discovery."); *Synchor*, 516 F.3d at 1102 (holding, "in any event," that "the district court's determination that the Class did not rebut the *Moench* presumption based solely upon Synchor's financial viability . . . is not an appropriate application of the prudent man standard set forth in either *Moench* or 29 U.S.C. § 1004").

To varying degrees, district courts in this Circuit have applied the *Moench* standard. *See, e.g.*, *Calpine*, 2005 WL 1431506; *In re Computer Sciences Corp. ERISA Litig.*, 635 F. Supp. 2d 1128, 1133 (C.D. Cal. 2009) (applying the *Moench* presumption in addition to the "prudent man" standard). Additionally, the First, Fifth, and Sixth Circuits have followed the Third Circuit and adopted the *Moench* standard. *See Bunch v. W.R. Grace & Co.*, 532 F. Supp. 2d 283, 289 (D. Mass. 2008), *aff'd by* 555 F.3d 1 (1st Cir. 2009); *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 254 (5th Cir. 2008); *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995). Even in circuits that have not formally adopted the *Moench* standard, district courts have applied the presumption of prudence. *See, e.g.*, *In re Lehman Brothers Sec. & ERISA Litig.*, No. 08-5598, 2010 WL 354937, at *5 (S.D.N.Y. Feb. 2, 2010) ("ERISA requires plan fiduciaries to manage plan assets prudently. . . . While the Second Circuit has not specifically addressed the *Moench* decision, *Moench* is persuasive, and many courts in this district have adopted it . . . .").

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#140,141,142

CIVIL MINUTES - GENERAL

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

Under the *Moench* standard, fiduciaries of an EIAP[10] are entitled to a presumption of prudence at the motion to dismiss stage, unless "the ERISA fiduciary could not have believed reasonably that continued adherence to the [plan's terms] was in keeping with the settlor's expectations of how a prudent trustee would operate." *See Wright*, 360 F.3d at 1097 (quoting *Moench*, 62 F.3d at 571). The presumption of prudence may be rebutted by allegations that the fiduciaries were aware that the "company's financial condition is seriously deteriorating and [that] there is a genuine risk of insider self-dealing," *id.* at 1098, or that "the company is on the brink of collapse or undergoing serious mismanagement," *id.* (quoting *LaLonde v. Textron, Inc.*, 270 F. Supp. 2d 272, 280 (D.R.I. 2003)).

In this case, it is undisputed that the Plans are EIAPs. *See Compl.* ¶¶ 79, 84. Thus, under the *Moench* standard, Defendants are entitled to a presumption of prudence. Furthermore, Plaintiffs have failed to rebut the presumption. They do not allege that Amgen was in a seriously deteriorating financial condition or was "on the brink of collapse." It is telling that Plaintiffs allege that "Amgen's off-label drug sales for Aranesp® and EPOGEN were *on the brink of collapse* as a result of Defendants' *serious mismanagement*," *see Compl* ¶ 244 (emphasis added), because it appears that Plaintiffs are attempting frame their allegations in an effort to rebut the presumption of prudence. However, Plaintiffs must allege that the company—and not merely two of its products—was in a dire financial situation. *See LaLonde*, 270 F. Supp. 2d at 280 (noting that evidence of a "precipitous decline in the employer's stock" can rebut the presumption of prudence if "combined with evidence that the *company* is on the brink of collapse or undergoing serious mismanagement." (emphasis added)).

In the Opposition, Plaintiffs offer a district court case from New Jersey, *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. 05-1151, 2009 WL 790452 (D.N.J. Mar. 23, 2009), to argue that Defendants acted imprudently by continuing to offer Amgen stock during the Class Period. *See Opp.* 4:7-17. In *Merck*, plan fiduciaries allegedly failed to disclose problems regarding the safety of its popular cardiovascular drug, Vioxx. *See id.* at *3. Due to

---

[10] While originally applied to Employee Stock Ownership Plans ("ESOPs"), the *Moench* standard applies equally to fiduciaries of EIAPs. *See Edgar v. Avaya, Inc.*, 503 F.3d 340, 347 (3d Cir. 2007) ("[The plaintiff] argues that *Moench*'s presumption of prudence does not apply here, because the Plans at issue in this case are not ESOPs. We are not persuaded. . . . Given the[] similarities [between ESOPs and EIAPs], we conclude that the underlying rationale of *Moench* applies equally here." (internal citation omitted)).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#140,141,142**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|----------|------------------------|------|----------------|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

safety concerns, Merck withdrew Vioxx from the market, causing the price of Merck stock to "plunge" 27 % on the day the withdrawal was announced. *See id.* at *2. The price of Merck stock continued to slide an additional 13% over the following month. *See id.* As a result, participants in several Merck employee benefit pension plans sued Merck fiduciaries for failing to manage plan investments prudently as required under ERISA. *See id.* at *3. The court in *Merck* held that the plaintiffs adequately stated a claim for imprudent investment. In applying the *Moench* standard adopted in the circuit, the court found that the plaintiffs rebutted the presumption of prudence by adequately alleging that Merck was in a "dire situation." *See id.* at *4 (noting that the stock price "plunged by almost 40% following the withdrawal of Vioxx").

While the *Merck* case shares some similarities with this case, *Merck* is distinguishable in several material respects. First, *Merck* involved a sudden and dramatic decline in the price of company stock (27 % in a single day and 40% overall during the month following the withdrawal of Vioxx). While the price of Merck stock "plunged" during a very short period of time, the price of Amgen stock exhibited a gradual decline of 29% during a period of approximately one and a half years. *See RJN*, Ex. 3, at 101-17. Indeed, Plaintiffs allege that Amgen stock dropped by 2.3 % on the day *The Cancer Letter* published the DAHANCA trial results, a relatively modest drop when compared with the 27 % drop in Merck stock the day Vioxx was withdrawn. *See Compl.* ¶ 237. Second, *Merck* involved the complete withdrawal of Vioxx from the market, while Aranesp® and Epogen® remained on the market despite the DAHANCA trial results and black label warnings. In light of these distinctions, Plaintiffs fail to sufficiently allege that Amgen was in a dire financial condition to rebut the presumption of prudence.

In the Opposition, Plaintiffs also argue that Amgen was "seriously mismanaged." However, the alleged management problems relate only to Amgen's development and marketing of Aranesp® and Epogen® rather than the management of the company as a whole. Thus, Plaintiffs' allegations of mismanagement associated with Aranesp® and Epogen® are insufficient to rebut the presumption of prudence. Furthermore, it is unclear that allegations of serious mismanagement alone are sufficient to rebut the presumption of prudence. *See Calpine*, 2005 WL 1431506, at *5 n.6 ("Wright does not hold that allegations of mismanagement are sufficient to rebut the presumption of prudence."); *id.* (characterizing *LaLonde*'s addition of "serious mismanagement" to the ways in which the presumption may be rebutted as mere dictum (citing *LaLonde*, 270 F. Supp. 2d at 280)); *see also In re Fremont Gen. Corp. Litig.*, 564 F. Supp. 2d 1156, 1158 (C.D. Cal. 2008) ("The Complaint in this case contains detailed and

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#140,141,142

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

specific allegations that Fremont General was in dire financial circumstances *and* subject to serious mismanagement . . . ." (emphasis added)).

In contrast to Plaintiffs' allegations, Defendants have provided evidence that Amgen was in a relatively stable financial condition.  *See RJN*, Ex. 4 (Amgen's 2006-2008 Form 10-K filings with the SEC); *see also Calpine*, 2005 WL 1431506, at *6 ("Plaintiff has not alleged and, given the financial statements before the Court, cannot allege facts rebutting the presumption of prudence arising under *Wright*.").  In *Calpine*, the court took judicial notice of the defendant corporation's financial statements, which showed steady revenue and profitability.  *See* 2005 WL 1431506, at *5.  The court analogized to the Ninth Circuit's decision in *Wright*, 360 F.3d at 1098-99, and held that the plaintiffs did not rebut the presumption of prudence in light of the evidence of the company's financial viability.  Similarly, Defendants have presented evidence of Amgen's stock price during the Class Period (*see RJN*, Ex. 3) and after the Class Period (*see RJN*, Ex. 12), as well as Amgen's 10-K Forms for 2006-2008 (*see RJN*, Ex. 4).  Defendants note that the price of Amgen stock declined 29 % from a high of $86.17 on September 19, 2005 to $60.86 at the close of the Class Period on March 9, 2007, and that decreases of far greater than 29 % have been insufficient to rebut the presumption of prudence.  *See Mot.* 12:5-11 (citing numerous cases).[11]

Therefore, under the *Moench* standard, Plaintiffs' claim for breach of the fiduciary duty of care must be dismissed without prejudice because Plaintiffs' have not alleged sufficient plausible facts to rebut the presumption of prudence.

      b.   <u>Plaintiffs Fail to Allege a Violation of the Prudent Man
Standard</u>

Even if the *Moench* standard is not applied, Plaintiffs have not sufficiently alleged that continuing to offer the Amgen investment option was imprudent.  If the presumption of prudence is not applied, courts conduct a "prudent man" analysis under the statute.  *See* § 1104(a)(1)(B)

---

[11] Defendants argue that the Class Period is artificially extended to include the highest point for the price of Amgen stock on September 19, 2005, even though they claim that the first alleged act of wrongdoing occurred in October 2006.  *See Mot.* 12 n.9.  Defendants claim that the price of Amgen stock declined only 20 % from October 2006 (when the DAHANCA trial was suspended) to March 9, 2007 (the end of the Class Period).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#140,141,142

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|----------|----------------------|------|----------------|
| Title    | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . ."); *see also Computer Sciences*, 635 F. Supp. 2d at 1134. The Ninth Circuit has observed that "a myriad of circumstances" could violate the prudent man standard, including the case of an apparently stable company that was engaged in an illegal scheme to inflate the price of the company's stock. *See Synchor*, 516 F.3d at 1102.

In this case, Plaintiffs have not offered sufficient allegations that the continued offering of the Amgen investment option was imprudent. If Defendants had eliminated the investment option, they would have been subject to lawsuits if the price of Amgen stock later rose. *See Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 256 (5th Cir. 2008) (noting that a "fiduciary cannot be placed in the untenable position of having to predict the future of the company stock's performance. In such a case, he could be sued for not selling if he adhered to the plan, but also sued for deviating from the plan if the stock rebounded"). Furthermore, eliminating the Amgen investment option may have violated federal securities laws because the decision would have been based on inside information. *See Wright*, 360 F.3d at 1098 n.4 (noting that federal securities laws are inconsistent with requiring corporate officers to use "inside information for the exclusive benefit of the corporation and its employees"). The cases cited by Plaintiffs to suggest that federal securities laws did not relieve Defendants of their duty to eliminate the Amgen investment option involved allegations of criminal conduct. *See, e.g.*, *In re Enron Corp. Sec. Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 566 (S.D. Tex. 2003); *Worldcom*, 263 F. Supp. 2d 745; *see also Syncor*, 516 F.3d at 1102. In this case, however, Plaintiffs do not provide sufficient facts to conclude that Defendants were allegedly engaged in "an illegal scheme" despite the conclusory allegations in the Complaint. *See Compl.* ¶¶ 4, 149, 177 (alleging "illegal" conduct). Indeed, Defendants note that "there have been *no* lawsuits filed against Amgen by the SEC, or any other federal agencies." *Reply* 6:15-16.

For these reasons, Plaintiffs have not alleged sufficient facts to indicate that continuing to offer the company's stock as an investment option under its EIAPs was imprudent. Therefore, the Court GRANTS Defendants' motion to dismiss Plaintiffs' claim for breach of duty of care without prejudice.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#140,141,142**

CIVIL MINUTES - GENERAL

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

> 3.  Breach of the Duty to Provide Complete and Accurate Information
> (Count III)

Plaintiffs appear to allege both an omissions theory and a misrepresentation theory with regard to Plaintiffs' claim for breach of the duty to provide complete and accurate information. *See Compl.* ¶¶ 335-345; *see id.* ¶ 341 (noting the "misrepresentations and omissions that were fundamentally deceptive concerning the prudence of investments in Amgen stock"). As currently alleged, however, Plaintiffs do not state a claim under either theory.

With regard to Plaintiffs' omissions theory—that Defendants were obligated to inform plan participants of the negative studies associated with Aranesp®—the Ninth Circuit does not recognize a general affirmative duty to disclose investment information. *See Calpine*, 2005 WL 1431506, at *7. ERISA fiduciaries are obligated to disclose information about the plan itself and only upon written request. *See* 29 U.S.C. § 1024(b)(4) ("The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."); *Calpine*, 2005 WL 1431506, at *7 ("An affirmative duty of disclosure arises under ERISA only when a fiduciary responds to inquiries from plan participants or promises to keep participants updated on future developments affecting the plan."); *see also Baker v. Kinsley*, 387 F.3d 649, 661-62 (7th Cir. 2004) (noting that a general duty of disclosure under ERISA would "run the risk of disturbing the carefully delineated corporate disclosure laws"). Plaintiffs fail to allege sufficient facts to establish a duty to disclose.

With regard to Plaintiffs' misrepresentations theory—that Defendants misrepresented the "off label" marketing of the drugs—Plaintiffs fail to allege individual reliance. A misrepresentation claim under ERISA requires allegations of "(a) the status as an ERISA fiduciary acting as a fiduciary; (b) a misrepresentation on the part of the defendant; (c) the materiality of that misrepresentation; and (d) *detrimental reliance by the plaintiff on the misrepresentation*." *Computer Sciences*, 635 F. Supp. 2d at 1140 (emphasis added). As Defendants argue in the Motion, "Plaintiffs' misrepresentation claim fails as a matter of law because Plaintiffs have not even attempted to plead sufficient facts regarding the basic elements of their misrepresentation claim." *Mot.* 17:23-25.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#140,141,142**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

Contrary to Plaintiffs' argument, the element of detrimental reliance is not presumed. *See Thomas v. Aris Corp. of Am.*, 219 F.R.D. 338, 342 (M.D. Pa. 2003). Plaintiffs do not provide sufficient authority for the Court to conclude that reliance is presumed in ERISA breach of fiduciary duty cases. *See Opp.* 17:13-14 (citing only the Complaint). Plaintiffs cite to a Minnesota district court opinion, *Morrison v. MoneyGram Int'l, Inc.*, 607 F. Supp. 2d 1033, 1056 (D. Minn. 2009), to argue that reliance is presumed, but they only quote a passage summarizing the plaintiff's argument as opposed to the court's holding. *See id.* ("*Plaintiffs allege* . . . that 'reliance is presumed in an ERISA breach of fiduciary duty case' . . . ." (emphasis added)). Moreover, the misrepresentations allegedly made in SEC filings and various press releases were made in Defendants' corporate capacity rather than any fiduciary capacity. *See Mot.* 18:13-16; *see also Calpine*, 2005 WL 1431506, at *6 (finding that the complaint failed to state a misrepresentation claim because "Plaintiff does not allege that these press releases or bond prospectuses were made or issued by defendants while acting in a fiduciary capacity or that these statements were directed to Plan participants"). For these reasons, Plaintiffs have failed to state a claim under either an omission or a misrepresentation theory. Therefore, the Court GRANTS Defendants' motion to dismiss Plaintiffs' claim for breach of the duty to provide complete and accurate information without prejudice.

4.       Breach of the Duty to Monitor (Count IV)

A claim for breach of the fiduciary duty to monitor is derivative of other claims. *See Computer Sciences*, 635 F. Supp. 2d at 1144 ("[B]ecause Plaintiffs' prudence claim fails for the reasons stated above, their monitoring claim also fails."); *Calpine*, 2005 WL 1431506, at *6 ("The Court's holding dismissing Count One [for breach of the duty of care] accordingly moots Count Two [for breach of the duty to monitor] as well. . . ."). Therefore, the Court GRANTS Defendants' motion to dismiss the claim for breach of the duty to monitor without prejudice.

5.       Co-Fiduciary Liability (Count V)

A claim for co-fiduciary liability under ERISA requires sufficient allegations of an underlying breach. *See Calpine*, 2005 WL 1431506, at *8 ("Plaintiff cannot state a claim for co-fiduciary liability without first stating a claim for breach of fiduciary duty under ERISA." (citing 29 U.S.C. § 1105(a)). As Plaintiffs have failed to state a claim for breach of fiduciary duty, Plaintiffs cannot state a claim that Defendants' are liable as co-fiduciaries. Therefore, the Court GRANTS Defendants' motion to dismiss the claim for co-fiduciary liability without prejudice.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#140,141,142**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

      6.      "Party-in-Interest" Liability (Count VI)

Plaintiffs claim that Defendants engaged in prohibited party-in-interest transactions under § 406(a), 29 U.S.C. § 1106(a). Plaintiffs allege that Defendants offered Amgen stock as an investment option when Defendants knew that the stock price was inflated (due to the concealment of the DAHANCA study results and other misinformation provided to the market). *See Compl.* ¶¶373-375. However, the prohibited transactions provisions of § 406 do not apply if the "acquisition is for adequate consideration, if no commission is charged, and if the plan is an EIAP." *Johnson v. Radian Grp., Inc.*, No. 08-2007, 2009 WL 2137241, at *23 (E.D. Pa. July 16, 2009) (citing 29 U.S.C. § 1108(e)). A purchase of stock at the prevailing market rate qualifies as "adequate consideration" under § 408(e). *See id.* (dismissing a claim for engaging in a prohibited transaction under § 406(a) where "there is no allegation that a price other than the prevailing market price for [the defendant's] stock was paid by any Plan participant").

In this case, the only contested element under § 408 is the adequacy of consideration. Plaintiffs allege that Defendants caused Amgen stock to be purchased "at artificially inflated prices." *See Compl.* ¶ 375; *see also Opp.* 24:5-8. However, Plaintiffs do not allege that Amgen stock was ever purchased at a price other than the prevailing market price (despite the allegation that the market price was inflated). Plaintiffs argue that an allegation that Amgen stock was traded at artificially high prices is sufficient to state a claim for engaging in a party-in-interest transaction, citing *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02-8324, 2004 WL 407007, at *9 (N.D. Ill. Mar. 3, 2004). However, the *Sears* case is the only district court to have accepted an allegation of an artificially inflated price to take the transaction out of the § 408 exception. *See Johnson*, 2009 WL 2137241, at *23.

Other courts have found that the purchase of a publically traded security at the prevailing market rate (even if inflated) qualifies as a transaction for adequate consideration, thereby exempting the transaction from the provisions of § 406. *See, e.g., In re CMS Energy ERISA Litig.*, 312 F. Supp. 2d 898, 917 (E.D. Mich. 2004); *Pietrangelo v. NUI Corp.*, No. 04-3223, 2005 WL 1703200, at *13 (D.N.J. July 20, 2005) ("[I]t is undisputed that the Plans purchased the NUI securities at market price from a qualifying national securities exchange. Therefore, Plaintiff's Section 406 claims must be dismissed."). Accordingly, the Court GRANTS Defendants' motion to dismiss the § 406 claim without prejudice.

      D.      Plaintiffs' Request for Leave to Amend

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#140,141,142**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5442 PSG (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | Steve Harris *et al.* v. Amgen, Inc. *et al.* | | |

     Plaintiffs request leave to amend to "correct any pleadings defects that may be identified by the Court." *Opp.* 25:22-23.  Defendants oppose this request because "Plaintiffs have had the benefit of *three* additional plaintiffs, the resources of *three* law firms, and *more than two years* to help refine their factual and legal allegations." *Reply* 12:9-11.  Although this is the second motion to dismiss in this case, it is the first occasion for the Court to pass upon the sufficiency of Plaintiffs' allegations.  Accordingly, the Court grants Plaintiffs' request for leave to amend.

IV.   <u>Conclusion</u>

     Based on the foregoing, the Court GRANTS Defendants' motion to dismiss without prejudice.  Plaintiffs may file an amended consolidated complaint with 21 days of this Order.  If Plaintiffs fail to file an amended consolidated complaint by <u>March 23, 2010</u>, the consolidated complaint will be dismissed with prejudice.

     **IT IS SO ORDERED.**