1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
       A Limited Liability Partnership
2       Including Professional Corporations
    STEVEN O. KRAMER, Cal. Bar No. 79626
3   skramer@sheppardmullin.com
    JONATHAN D. MOSS, Cal. Bar No. 252376
4   jmoss@sheppardmullin.com
    333 South Hope Street, 43rd Floor
5   Los Angeles, California  90071-1422
    Telephone:  213-620-1780
6   Facsimile:   213-620-1398

7   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
       A Limited Liability Partnership
8       Including Professional Corporations
    JONATHAN ROSE (*pro hac vice*)
9   jrose@sheppardmullin.com
    EMILY SEYMOUR COSTIN, Cal. Bar No. 240414
10  ecostin@sheppardmullin.com
    1300 I Street, N.W., 11th Floor East
11  Washington, DC  20005-3314
    Telephone:  202-218-0000
12  Facsimile:   202-218-0020

13  Attorneys for AMGEN INC., AMGEN MANUFACTURING, LIMITED, KEVIN W.
    SHARER, RICHARD D. NANULA, CHARLES BELL, FRANK BIONDI, JR.,
14  JERRY CHOATE, FRANK HERRINGER, GILBERT OMENN, DAVID
    BALTIMORE, JUDITH PELHAM, FREDERICK GLUCK, LEONARD
15  SCHAEFFER, ROBERT BRADWAY, DENNIS FENTON and AMGEN
    FIDUCIARY COMMITTEE
16

17                   UNITED STATES DISTRICT COURT

18        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| 19  STEVE HARRIS, DENNIS RAMOS, JORGE TORRES, and ALBERT | Consolidated Case No.: CV 07-05442-PSG (PLAx) |
| 20  CAPPA, On Behalf of Themselves and All Others Similarly Situated, | |
| 21 | Honorable Philip S. Gutierrez presiding |
|                         Plaintiffs, | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION** |
| 22  v. | |
| 23  AMGEN INC., FRANK J. BIONDI, JR., JERRY D. CHOATE, FRANK C. | |
| 24  HERRINGER, GILBERT S. OMENN, DAVID BALTIMORE, JUDITH C. | [Supporting Declaration of Steven O. Kramer filed Concurrently Herewith] |
| 25  PELHAM, KEVIN W. SHARER, FREDERICK W. GLUCK, LEONARD | |
| 26  D. SCHAEFFER, ROBERT A. BRADWAY, DENNIS M. FENTON, | |
| 27  RICHARD NANULA, CHARLES BELL, GLOBAL BENEFITS | |
| 28       [CAPTION CONTINUED] | |

1  COMMITTEE OF THE BOARD OF
2  DIRECTORS OF AMGEN, PLAN
   FIDUCIARY COMMITTEE and JOHN
3  DOES 1-50,

4                          Defendants.

5  ─────────────────────────────────

6  DENNIS F. RAMOS, On Behalf of          Case No.: CV 08-03316-PSG (PLA)
   Themselves and All Others Similarly
7  Situated,

8                          Plaintiff,

9  v.

10 AMGEN, INC., AMGEN
   MANUFACTURING, LIMITED,
11 RICHARD NANULA, FRANK J.
   BIONDI, JR., JERRY D. CHOATE,
   FRANK C. HERRINGER, GILBERT
12 S. OMENN, DAVID BALTIMORE,
   JUDITH C. PELHAM, KEVIN W.
13 SHARER, FREDERICK W. GLUCK,
   LEONARD D. SCHAEFFER,
14 ROBERT A. BRADWAY, DENNIS M.
   FENTON, THE FIDUCIARY
15 COMMITTEE, and JOHN DOES 1-50,

16                         Defendants.

17 ─────────────────────────────────
                                          Case No.: CV 09-03973-PSG (PLA)
18 DONALD HANKS, Individually and
   On Behalf of All Others Similarly
19 Situated,

20                          Plaintiff,

21 v.

22 AMGEN, INC., KEVIN W. SHARER,
   RICHARD D. NANULA, CHARLES
23 BELL, AMGEN GLOBAL BENEFITS
   COMMITTEE, AMGEN FIDUCIARY
24 COMMITTEE and JOHN and JANE
   DOES 1-10,
25
                           Defendants
26

27

28

W02-WEST:1JDM1\402521179.2                DEFENDANTS' OPPOSITION TO *EX PARTE* APPLICATION

## TABLE OF CONTENTS

Page

I.      Introduction ........................................................................................ 1

II.     Plaintiffs' *Ex Parte* Application is Untimely .................................. 1

III.    Defendants Are Not Obligated to Produce Any Additional Documents under 29 U.S.C. § 1024(b)(4) ........................................ 3

IV.     Defendants Are Under No Obligation to Make Disclosures or Produce Documents under Fed. R. Civ. P. 26(a) ............................ 7

V.      No Extension Is Warranted ............................................................. 8

VI.     Conclusion....................................................................................... 8

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                          <u>Page</u>

Allinder v. Inter-City  Prods. Corp.,
    152 F.3d 544 (6th Cir. 1998) ................................................................. 5, 6

Ames v. Am. Nat'l Can Co.,
    170 F.3d 751 (7th Cir. 1999) ................................................................. 5

Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein,
    107 F.3d 139 (2d Cir. 1997) ................................................................. 6

Brown v. Am. Life Holdings, Inc.,
    190 F.3d 856 (8th Cir. 1999) ................................................................. 5

Faircloth v. Lundy Packing Co.,
    91 F.3d 648 (4th Cir. 1996) ................................................................. 6, 7

Harzewski v. Guidant Corp.,
    489 F.3d 799 (7th Cir. 2007) ................................................................. 6

Hively v. BBA Aviation Benefit Plan,
    331 Fed. Appx. 510, 511 (9th Cir. 2009) ................................................................. 4

Hughes Salaried Retirees Action Cmte. v.
    Adm'r of Hughes Non-Bargaining Ret. Plan,
    39 F.3d 1002 (9th Cir. 1994) ................................................................. 4

Hughes Salaried Retirees Action Cmte. v.
    Adm'r of Hughes Non-Bargaining Ret. Plan,
    72 F.3d 686 (9th Cir. 1995) ................................................................. 3, 4

Shaver v. Operating Eng'rs Local 428 Pension Trust Fund,
    332 F.3d 1198 (9th Cir. 2003) ................................................................. 4

<u>Statutes</u>                                                                                          <u>Page</u>

29 U.S.C. § 1024(b)(4) ................................................................. 1, 3, 4, 5, 6

Fed. R. Civ. P. 26 ................................................................. 7

Fed. R. Civ. P. 26(a) ................................................................. 1, 7, 8

Fed. R. Civ. P. 26(a)(1)(A)(ii) ................................................................. 7

Fed. R. Civ. P. 26(a)(1)(C) ................................................................. 7

Fed. R. Civ. P. 26(d)(1) ................................................................. 7

Fed. R. Civ. P. 26(f) ................................................................. 7

<u>Miscellaneous</u>                                                                    <u>Page</u>

*Employee Retirement Security Act of 1974*
    Section 104(b)(4).......................................................................... 1, 2, 3, 4, 5, 6, 7, 8

*What Documents Do Employees Have A Right to Demand*
    *From Their Employers?,*
    39 Wm. & Mary L. Rev. 1741, 1746 (May 1998) ................................................ 3

## I.    __Introduction__

Faced with insurmountable deficiencies in their complaint, and with a week left to cure them, Plaintiffs bring this *ex parte* application as a futile, last resort. Plaintiffs' *ex parte* application seeks an order compelling Defendants to produce documents and make Rule 26(a) disclosures, and on that basis only, requests an extension of time for Plaintiffs to amend their defective complaint. The application should be denied. First, Plaintiffs' last minute request for the Court to issue an order to produce documents is untimely. Plaintiffs could have sought these documents long ago by noticed motion. Second, Defendants are under no obligation to produce the documents under Section 104(b)(4) of the Employee Retirement Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. § 1024(b)(4). Defendants have already produced the documents specifically identified under ERISA Section 104(b)(4), and the Ninth Circuit narrowly interprets a plan administrator's disclosure obligations under that section. Third, Plaintiffs' request for Rule 26(a) disclosures is premature and, in any event, Defendants are only required to *identify* categories of documents under Rule 26(a) and are not required to produce any documents at all. Accordingly, Plaintiffs' *ex parte* application should be denied in its entirety.

## II.    __Plaintiffs' *Ex Parte* Application is Untimely__

On March 2, 2010, this Court granted Defendants' motion to dismiss, without prejudice, and gave Plaintiffs until March 23, 2010 to file an amended consolidated complaint. (Dkt. No. 158). With only eight days remaining to cure their defective complaint, on March 15, Plaintiffs filed an *ex parte* application for an order requiring Defendants to produce documents and make Rule 26(a) disclosures, and also requested that their deadline for filing an amended complaint be extended 21 days following production of the documents.[1]

---

[1] Any motion for documents should have been made long ago by noticed motion, not by *ex parte* application giving Defendants only one day to respond.

1    Plaintiffs contend that on two occasions – February 12, 2008 and May 11,

2    2009 – they requested, pursuant to ERISA Section 104(b)(4), that Defendants

3    produce documents relating to the Amgen Savings Plan and the Amgen Retirement

4    Savings Manufacturing Plan (the "Plan") and that Defendants did not comply with

5    their requests.  (Declaration of Steven O. Kramer ("Kramer Decl."), ¶¶ 2-3, Exs. A

6    and B).  To the contrary, on March 10, 2008 and June 10, 2009, Defendants timely

7    responded to each request and produced all documents required to be disclosed

8    under ERISA Section 104(b)(4).  (Kramer Decl., ¶¶ 4-5, Exs. C and D).  Plaintiffs

9    appear to concede that Defendants provided the documents specifically identified by

10   ERISA Section 104(b)(4) (*i.e.* the latest updated summary plan description, latest

11   annual report, terminal report, bargaining agreement, trust agreement and contracts).

12   (Kramer Decl., ¶ 6; *see also* Exs. C and D).  But now, after more than two years and

13   after their Amended Consolidated Complaint has been dismissed, Plaintiffs

14   complain that Defendants were also required to produce "other instruments under

15   which the plan is established or operated."[2]  (Plaintiffs' Application, 4:18).

16      Plaintiffs' *ex parte* application is untimely.  Plaintiffs have known since July

17   14, 2009, when the Ninth Circuit issued its decision reversing this Court's dismissal

18   for lack of standing, that they would be re-filing their complaint.  They filed their

19   consolidated complaint on November 12, 2009 without ever raising this issue

20   through a noticed motion.  The Court should recognize Plaintiffs' *ex parte*

21   application for what it is, a desperate attempt to create an issue to avoid dismissal of

22

23   _____

24   [2] Specifically, Plaintiffs seek "all documents concerning the operation, administration, and management of the Plans, such as documents that identify the

25   Plan fiduciaries, minutes from the meetings, resolutions of the Board of Directors and committees that pertain to the Plans, and documents that concern the

26   appointment, removal, duties, and responsibilities of Plans' fiduciaries." (Kramer Decl., ¶ 3, Ex. A).  They also demand "documents concerning written

27   communications distributed to all participants in the Plans during the Class Period (i.e. not communications distributed solely to individual participants concerning

28   individual issues.)" *Id.*

1   their complaint with prejudice.  The Court's March 23 deadline should stand

2   unaltered by Plaintiffs' last minute *ex parte* application.

3   **III.   Defendants Are Not Obligated to Produce Any Additional Documents**

4   **under 29 U.S.C. § 1024(b)(4)**

5   Defendants have fully complied with any obligation to produce documents

6   under ERISA Section 104(b)(4).  That section provides, in relevant part, that:

7   "The administrator shall, upon written request of any participant or

8   beneficiary, furnish a copy of the latest updated summary plan

9   description, and the latest annual report, any terminal report, the

10   bargaining agreement, trust agreement, contract, or other instruments

11   under which the plan is established or operated."

12   29 U.S.C. § 1024(b)(4).

13   On March 10, 2008 and again on June 10, 2009, Defendants produced a

14   significant volume of Plan and related documents to Plaintiffs, including all

15   documents enumerated under ERISA Section 104(b)(4).  (Kramer Decl., ¶¶ 4-5,

16   Exs. C and D).  Defendants did not produce the documents raised in Plaintiffs' *ex*

17   *parte* application (*see* footnote 2) because those overbroad document requests far

18   exceed the scope of Section 104(b)(4).

19   Plaintiffs point to *Hughes Salaried Retirees Action Cmte. v. Adm'r of Hughes*

20   *Non-Bargaining Ret. Plan*, 72 F.3d 686 (9th Cir. 1995) ("*Hughes II*") as support for

21   their position.  But *Hughes II* clearly cuts against Plaintiffs.  The Ninth Circuit in

22   *Hughes II* "narrowly interprets the statutory disclosure requirement" under ERISA

23   Section 104(b)(4) and concluded that the plan administrator was not obligated to

24   produce the requested documents.  *Hughes*, 72 F. 3d at 689-91; *see also* Anne-Marie

25   M. Miles, *ERISA Section 104(B)(4):  What Documents Do Employees Have A Right*

26   *to Demand From Their Employers?*, 39 Wm. & Mary L. Rev. 1741, 1746 (May

27   1998).

28

W02-WEST:1JDM1\402521179.2          DEFENDANTS' OPPOSITION TO *EX PARTE* APPLICATION

1    *Hughes II* was an *en banc* decision of the Ninth Circuit reversing an earlier

2    decision by a three-judge panel.  The three-stage panel held that any item "critical to

3    the operation of a plan" was within the scope of Section 104(b)(4).  In *Hughes*

4    *Salaried Retirees Action Cmte. v. Adm'r of Hughes Non-Bargaining Ret. Plan*, 39

5    F.3d 1002 at 1007 (9th Cir. 1994), rev'd en banc, 72 F.3d 686 (9th Cir. 1995)

6    ("*Hughes I*").  The *Hughes II* Court, in reversing *Hughes I,* held that "under the

7    original panel's interpretation of § 104(b)(4), a plan administrator would be required

8    to disclose virtually everything in its plan files upon request."  72 F.3d at 690.  The

9    *en banc* Court concluded that "[u]nder [the panel's] interpretation of § 104(b)(4), it

10   would be impossible to conceive of any documents even tangentially related to an

11   employee benefit plan which would not fall within § 104(b)(4)'s scope" and "such a

12   broad disclosure requirement...is not supported by either the language of the statute

13   or its legislative history."  *Id.* at 690-91 (internal citations omitted).  Thus, rather

14   than providing an expansive view of the documents which are within the scope of

15   ERISA Section 104(b)(4), *Hughes II* took a narrow view holding that "[t]he plain

16   language of the statute limits the universe of documents falling within that phrase to

17   documents similar in nature to those *specifically identified*, which describe the terms

18   and conditions of the plan*,* as well as its administration and financial status."  *Id.* at

19   690. (emphasis added).

20        The Ninth Circuit reaffirmed its view in *Shaver v. Operating Eng'rs Local*

21   *428 Pension Trust Fund*, 332 F.3d 1198 (9th Cir. 2003), holding that "the broad

22   term, 'other instruments,' should be limited to the class of objects that specifically

23   precedes it."  332 F.3d at 1202.  *See also Hively v. BBA Aviation Benefit Plan*, 331

24   Fed. Appx. 510, 511 (9th Cir. 2009) ("Documents which 'relate only to the manner

25   in which the plan is operated' are not subject to disclosure under § 1024(b)(4).")

26   (quoting *Shaver*, 332 F.3d at 1202)).

27

28

1    As noted above, the list of documents actually enumerated under ERISA

2    Section 104(b)(4) is quite narrow, encompassing only summary plan descriptions,

3    annual reports, terminal reports, bargaining agreements, trust agreements, and

4    contracts under which the plan is established or operated.  The documents requested

5    by Plaintiffs, namely documents relating to the appointment, removal, and duties of

6    certain committee members is clearly far afield from that list of documents and not

7    within "the class of objects" enumerated.

8    Besides being the clear view of the Ninth Circuit, the same position has been

9    taken by several other circuits – the Second, Fourth, Sixth, Seventh and Eighth

10   Circuits.  In *Brown v. Am. Life Holdings, Inc.*, 190 F.3d 856, 861 (8th Cir. 1999), for

11   example, the Eight Circuit held: "In § 1024(b)(4), the reference is to instruments

12   'under which' the plan is established or operated.  In common legal parlance, that

13   means instruments which govern the plan, rather than those which simply evidence

14   its operation. . . . Bearing in mind that the term 'other instruments' should also be

15   read consistently with the more specific terms that precede it in § 1024(b)(4), . . . we

16   agree with the circuits that have construed 'other instruments' as meaning, not any

17   document relating to a plan, but only formal documents that establish or govern the

18   plan."

19   The Seventh Circuit reached a similar conclusion in *Ames v. Am. Nat'l Can

20   Co.*, 170 F.3d 751, 758-59 (7th Cir. 1999): "[O]ther courts of appeals have found

21   that the use of the term 'instruments' implies that the statute reaches only formal

22   legal documents governing a plan. . . . Plaintiffs argue that this interpretation of the

23   requirement is too narrow, and that they should have a right to all documents that

24   provide information about a plan and its benefits.  We agree with our sister circuits

25   that the latter interpretation would make hash of the statutory language, which on its

26   face refers to a specific set of documents: those under which a plan is established or

27   operated.  If it had meant to require production of all documents relevant to a plan,

28   Congress could have said so." So did the Sixth Circuit in *Allinder v. Inter-City*

1   *Prods. Corp.*, 152 F.3d 544, 549 (6th Cir. 1998): "From the statute's enumeration of

2   the specific terms 'summary plan description,' 'plan description,' 'bargaining

3   agreement,' and 'contract,' it is apparent that 'other instruments' was meant to refer

4   to documents that provide or contain information concerning the terms and

5   conditions of the participant's policy.  In a similar vein, the general term 'other

6   instruments' is qualified by the phrase 'under which the plan is established or

7   operated.' 29 U.S.C. § 1024(b)(4).  Section 1024(b)(4)'s reference to 'other

8   instruments' is thus properly limited to those class of documents which provide a

9   plan participant with information concerning how the plan is operated."

10         The Second Circuit in *Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v.*

11   *Weinstein*, 107 F.3d 139, 142-43 (2d Cir. 1997) held: "that by 'instruments'

12   Congress meant the formal legal documents that govern or confine a plan's

13   operations, rather than the routine documents with which or by means of which a

14   plan conducts its operations. . . . Moreover, we note that the use of the term

15   'instrument' to connote a formal governing document is echoed in other sections of

16   ERISA. . . . In contrast, other sections of ERISA, which require that information be

17   disclosed to regulatory agencies, list far broader categories of documents."  The

18   Fourth Circuit in *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 654 (4th Cir. 1996)

19   denied a nearly-identical request for "any meeting minutes" as too broad to fall

20   under ERISA Section 104(b)(4), holding: "[I]f Congress had intended § 104(b)(4)

21   to encompass all documents that provide information about the plan and benefits,

22   Congress could have used language to that effect.  Instead, Congress used language

23   limiting § 104(b)(4) to 'instruments under which the plan is established or operated.'

24   The clear and unambiguous meaning of this statutory language encompasses only

25   formal or legal documents under which a plan is set up or managed.".[3]

26

27   _____

[3] Plaintiffs cite to *Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007) for the proposition that Defendants must now produce Fiduciary Committee meeting

28   minutes. First, *Harzewski* is inapplicable because it did not concern a request for

1         Plaintiffs' requests here are beyond the scope of ERISA Section 104(b)(4)

2    because the documents they seek are not similar at all to those specifically identified

3    in that section (documents which have already been provided to Plaintiffs).  (*See*

4    Kramer Decl., ¶¶ 4-5, Exs. C and D).  In sum, Plaintiffs cannot proceed under

5    ERISA Section 104(b)(4) because the documents they seek are beyond the scope of

6    the statute.

7    **IV.**    **<u>Defendants Are Under No Obligation to Make Disclosures or Produce</u>**

8         **<u>Documents under Fed. R. Civ. P. 26(a)</u>**

9         Federal Rule of Civil Procedure 26(a) is completely inapplicable.  First,

10   Plaintiffs' request that Defendants make required disclosures under Rule 26(a) is

11   premature.  Pursuant to Rule 26(a)(1)(C), a party need not make its initial

12   disclosures until "at or within 14 days after the parties' Rule 26(f) conference unless

13   a different time is set by stipulation or court order . . ."  Fed. R. Civ. P. 26(a)(1)(C).

14   Here, the parties have not had a Rule 26(f) conference.  (Kramer Decl., ¶ 7).  Nor

15   has the Court set a scheduling conference and it makes little sense to do so until

16   there is a legally cognizable complaint on file, which there is not.  Quite clearly,

17   Defendants do not need to make any disclosure under Rule 26(a)[4].

18        Second, even if Plaintiffs were entitled to Rule 26(a) disclosures (which they

19   are not), Defendants would be under no obligation to produce the requested

20   documents.  The initial disclosure of documents need not include production of

21   documents themselves, nor need it contain an itemized list of each document.

22   Rather, the disclosure must merely describe and categorize the nature and location

23   of documents and records.  Fed. R. Civ. P. 26(a)(1)(A)(ii).

24

25   documents under Section 104(b)4. Second, the *Faircloth* court ruled that a general
     request for meeting minutes was "too broad" to fall under the scope of the "other

26   instruments" provision of Section 104(b)(4).

27   [4] Nor do Defendants need to respond to Rule 26 discovery requests.  *See* Fed. R.
     Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the

28   parties have conferred as required by Rule 26(f) . . .")

-7-

## V.    <u>No Extension Is Warranted</u>

Plaintiffs' requested time extension to file their amended complaint is based entirely upon a request for documents Defendants are not required to produce until Plaintiffs have pled a valid cause of action.  Plaintiffs seek to put the proverbial cart before the horse.  Plaintiffs should plead an actionable complaint before seeking any additional document discovery.  Here Plaintiffs do not seek a time extension for good cause or as a professional courtesy.  Because they are not entitled to any documents, the Court should not deny Plaintiffs request for additional time to file their amended complaint.

## VI.   <u>Conclusion</u>

For all the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' *ex parte* application in its entirety.  If the Court is inclined to grant any part of Plaintiffs' *ex parte* application, Defendants request more time to brief the issue as to whether Defendants are obligated to produce any additional documents to Plaintiffs pursuant to ERISA Section 104(b)(4) or make disclosures under Federal Rule of Civil Procedure 26(a).

Dated: March 16, 2010          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By _____
          STEVEN O. KRAMER
   *Attorneys for Defendants Listed on Caption Page*